No. 87,567

In the Matter of VASHTI WINTERBURG, *Respondent*.

(41 P.3d 842)

Opinion filed March 8, 2002.

*Alexander M. Walczak*, deputy disciplinary administrator, argued the cause and was on the formal complaint for the petitioner.

*Jonathan C. Becker*, of Lawrence, argued the cause for respondent, and *Vashti Winterburg*, respondent, argued the cause pro se.

*Per Curiam*: This is an original uncontested proceeding in discipline filed by the Disciplinary Administrator's office against Vashti Winterburg, of Lawrence, an attorney admitted to the practice of law in Kansas.

The formal complaint against respondent alleges violations of KRPC 1.3 (2001 Kan. Ct. R. Annot. 323), diligence and promptness; 1.4 (2001 Kan. Ct. R. Annot. 334), communication; 1.16(d) (2001 Kan. Ct. R. Annot. 387), terminating representation; 3.2 (2001 Kan. Ct. R. Annot. 398), expediting litigation; 3.3 (2001 Kan. Ct. R. Annot. 402), candor; 8.4(c) (2001 Kan. Ct. R. Annot. 437), misconduct; and Supreme Court Rule 207 (2001 Kan. Ct. R. Annot. 246), failure to cooperate.

A hearing before the panel of the Kansas Board for Discipline of Attorneys was held on June 6, 2001, in the hearing room of the office of Disciplinary Administrator, Topeka, Kansas. Respondent appeared in person and through counsel Jonathan C. Becker. Respondent testified at the panel hearing and stipulated to the facts and to the violations of KRPC as set forth in the complaint. The panel found the following by clear and convincing evidence:

*"Gillaspie Complaint: DA8007*

"2. On August 11, 1999, Mary Ellen Gillaspie retained the Respondent to represent her in an action for divorce. Ms. Gillaspie paid the Respondent $265.00. Although the Respondent failed to provide a written engagement letter, Ms. Gillaspie understood that the Respondent's time would be billed at $100.00 per hour.

"3. On August 13, 1999, the Respondent filed a petition for divorce in behalf of Ms. Gillaspie, Petitioner. After a hearing on October 25, 1999, the divorce was

granted. Pursuant to local custom, the matter was bifurcated and the issues of property settlement and assignment of debt were scheduled for hearing on January 20, 2000.

"4. Ms. Gillaspie and the Respondent did not meet to prepare for the January 20, 2000, hearing. On January 20, 2000, Ms. Gillaspie took a day off from work to attend the hearing. Prior to the hearing, the Respondent telephoned Ms. Gillaspie and falsely informed her that the hearing was 'bumped' and would be rescheduled.

"5. With respect to the hearing scheduled for January 20, 2000, the Respondent represented to the Court and to Timothy G. Riling, opposing counsel, that Ms. Gillaspie was ill and unable to attend the hearing scheduled for that day. Ms. Gillaspie was not ill on January 20, 2000.

"6. Beginning in January, 2000, and continuing through November, 2000, Ms. Gillaspie made many attempts to contact the Respondent. Ms. Gillaspie telephoned the Respondent, Ms. Gillaspie sent the Respondent notes by facsimile, and Ms. Gillaspie sent the Respondent letters. The Respondent failed to return Ms. Gillaspie's telephone calls and failed to respond to Ms. Gillaspie's written correspondence. The Respondent never rescheduled the property division hearing.

"7. On July 20, 2000, Ms. Gillaspie sent a letter of complaint to the Office of the Disciplinary Administrator, regarding the Respondent and Mr. Riling. The Deputy Disciplinary Administrator attempted to handle the complaint informally. However, the Respondent failed to provide a written response. As a result, on September 1, 2000, Ms. Gillaspie's complaint was docketed for investigation.

"8. Jeffrey O. Heeb, the attorney assigned to investigate Ms. Gillaspie's complaint, sent to the Respondent two letters requesting that the Respondent provide a written response to Ms. Gillaspie's complaint. The Respondent never provided a written response to Ms. Gillaspie's complaint.

"9. On two occasions, Ms. Gillaspie demanded the return of her file. On November 7, 2000, Ms. Gillaspie wrote to the Respondent, demanding that the Respondent 'return all documents pertaining to [Ms. Gillaspie's] case to [Ms. Gillaspie] immediately.' The Respondent failed to respond to Ms. Gillaspie's request and the Respondent failed to return the documents to Ms. Gillaspie. Then, on November 20, 2000, Ms. Gillaspie wrote to the Respondent asking that the Respondent 'release to Todd L. Crenshaw all materials from the file [that the Respondent was] maintaining on [Ms. Gillaspie's] behalf.' At that time, the Respondent did not release any materials to Mr. Crenshaw.

"10. At the insistence of her attorney, shortly before the hearing held on the Formal Complaint in this case, the Respondent returned Ms. Gillaspie's materials to Mr. Crenshaw. Ms. Gillaspie then retrieved the materials from Mr. Crenshaw.

"11. The property division issue in Ms. Gillaspie's divorce remains unresolved.

## "Rohr Complaint: DA8205

"12. In June, 2000, Deborah Rohr retained the Respondent to represent her in post-divorce child custody and child support matters. At the time she retained the Respondent, Ms. Rohr paid the Respondent $100.00. The Respondent promised Ms. Rohr that the Respondent would immediately file the necessary motions.

"13. Ms. Rohr paid to the Respondent an additional $300.00, to file and prosecute the necessary motions.

"14. From June, 2000, to December, 2000, Ms. Rohr telephoned the Respondent on numerous occasions, attempting to learn the status of her case. Only occasionally was Ms. Rohr successful in contacting the Respondent. When Ms. Rohr was successful in contacting the Respondent, the Respondent provided excuses for her failure to file the necessary motions.

"15. Finally, on December 6, 2000, the Respondent filed a motion to change child custody, a motion to change child support, and a motion for reimbursement of medical and dental expenses.

"16. After filing the motions, the Respondent failed to take any further action in Ms. Rohr's case. The Respondent did not inform Ms. Rohr that she was terminating the representation; nor did the Respondent return the unearned retainer.

"17. On March 29, 2001, Ms. Rohr traveled to the Respondent's office, which is located in the Respondent's residence. At the time Ms. Rohr arrived, the Respondent was not at home. Ms. Rohr waited in her car until the Respondent returned home. At that time, Ms. Rohr demanded the return of her file and the unused retainer. The Respondent refunded $80.00 to Ms. Rohr.

"18. On April 9, 2001, the Deputy Disciplinary Administrator sent the Respondent a copy of Ms. Rohr's complaint and a letter informing the Respondent that Ms. Rohr's complaint had been docketed. Additionally, the Deputy Disciplinary Administrator, in his letter, requested that the Respondent provide a written response to Ms. Rohr's complaint within ten days.

"19. On April 11, 2001, Don Burns, investigator for the Office of the Disciplinary Administrator contacted the Respondent by telephone. Mr. Burns confirmed with the Respondent that she had received the Deputy Disciplinary Administrator's letter and a copy of Ms. Rohr's complaint. The Respondent assured Mr. Burns that a written response would be provided within ten days as requested. The Respondent failed to respond.

"20. On May 14, 2001, the Respondent wrote to Ms. Rohr regarding the status of her case.

"21. Although the date in the Notice of Mailing is December 19, 2000, it appears as though in May, 2001, the Respondent finally filed a motion to withdraw in Ms. Rohr's case.

"22. On May 18, 2001, James G. Chappas entered his appearance in behalf of Ms. Rohr. On May 23, 2001, through her attorney, the Respondent forwarded Ms. Rohr's file to Mr. Chappas."

The panel made the following conclusions of law:

"1. Attorneys must act with reasonable diligence and promptness in representing their clients. *See* KRPC 1.3. In this case, the Respondent failed to provide diligent representation to Ms. Gillaspie when she failed to timely reschedule the property division hearing. The Respondent violated KRPC 1.3 with regard to Ms. Rohr when she failed to timely file and prosecute the necessary motions. Because the Respondent failed to act with reasonable diligence and promptness in representing Ms. Gillaspie and Ms. Rohr, the Hearing Panel concludes that the Respondent violated KRPC 1.3.

"2. KRPC 1.4(a) provides:

'A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.'
*Id.* The Respondent failed to respond to requests for information from Ms. Gillaspie and Ms. Rohr. Additionally, the Respondent failed to keep Ms. Gillaspie and Ms. Rohr reasonably informed about the status of their cases. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 1.4(a).

"3. KRPC 1.16(d) provides:

'Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee that has not been earned. The lawyer may retain papers relating to the client to the extent permitted by other law.'
*Id.* The Respondent ceased representing Ms. Gillaspie and Ms. Rohr and failed to take reasonable steps to protect them. The Respondent did not give any notice to them and did not surrender their papers, in violation of KRPC 1.16(d). The Hearing Panel concludes that the Respondent violated KRPC 1.16(d) with regard to Ms. Gillaspie and Ms. Rohr.

"4. An attorney violates KRPC 3.2 if she fails to make reasonable efforts to expedite litigation consistent with the interests of her client. *Id.* Because the Respondent continued Ms. Gillaspie's property division hearing, and failed to have it rescheduled, the Hearing Panel concludes that the Respondent violated KRPC 3.2.

"5. KRPC 3.3(a)(1) provides that '[a] lawyer shall not knowingly make a false statement of material fact to a tribunal.' *Id.* The Respondent provided false information to the Court and opposing counsel, claiming her client was ill and unable to attend the January 20, 2000, hearing. Accordingly, the Hearing Panel concludes that the Respondent violated KRPC 3.3(a)(1) by making a false statement of material fact to a tribunal.

"6. [KRPC 8.4 provides:]'It is professional misconduct for a lawyer to:

(a) Violate or attempt to violate the rules of professional conduct, knowingly assist or induce another to do so, or do so through the acts of another;

. . . .

(g) engage in any other conduct that adversely reflects on the lawyer's fitness to practice law.'

*Id.* In this case, the Hearing Panel concludes that the Respondent violated KRPC 8.4(a) when she violated other rules of professional conduct. Additionally, the Hearing Panel concludes that falsely informing the Court and opposing counsel that Ms. Gillaspie was ill, when she was not ill, adversely reflects on the Respondent's fitness to practice law, in violation of KRPC 8.4(g).

"7. Kan. Sup. Ct. R. 207(b) provides as follows:

'(b) It shall be the duty of each member of the bar of this state to aid the Supreme Court, the Disciplinary Board, and the Disciplinary Administrator in investigations concerning complaints of misconduct, and to communicate to the Disciplinary Administrator any information he or she may have affecting such matters.'

*Id.* The Respondent failed to respond to the complaints filed by Ms. Gillaspie and Ms. Rohr as requested by the Deputy Disciplinary Administrator and the attorney investigator. Accordingly, the Hearing Panel concludes that the Respondent violated Kan. Sup. Ct. R. 207(b)."

The panel applied the ABA Standards for Imposing Lawyer Sanctions (1991) and considered ABA Standard 3 in making its recommendation as to the discipline to be imposed against the respondent.

The panel found the following aggravating factors: bad faith obstruction, failure to acknowledge that her conduct was wrong, vulnerability of victims, and a pattern of misconduct. The panel found several mitigating circumstances, including absence of disciplinary record and inexperience in the practice of law. The panel considered and rejected respondent's depression as a mitigating factor:

"The Respondent testified, in mitigation of the complaint, that she suffers from depression, that she has been under the care of a psychiatrist since May, 1999, and that she is currently taking medication for this condition. The Hearing Panel concludes, however, that this is not a factor in mitigation. The Respondent's depression is not a factor in mitigation because (1) there was no evidence, other than the Respondent's testimony, of the Respondent's diagnosis, (2) there was no evidence that the depression caused the misconduct, (3) there was no evidence either that the Respondent has recovered from the depression or the Respondent's prognosis, and (4) there was no evidence that recurrence of the misconduct is unlikely.

"It is of particular concern to the Hearing Panel that the majority of the misconduct in this case occurred after the Respondent initially sought assistance from

a psychiatrist and after the Respondent began taking medication for depression and a hormonal imbalance."

In addition to the above-cited factors, the panel thoroughly examined and considered Standards 4.42 and 6.12. Standard 4.42 provides, in pertinent part: "Suspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." Here, "Respondent knowingly failed to perform services for Mrs. Gillaspie and Ms. Rohr and caused actual injury to both clients."

Standard 6.12 provides:

"Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding."

The panel stated: "Here, the Respondent included false information in a pleading filed with the Court. The false information provided the basis for the continuance of the property division hearing in the Gillaspie matter."

The panel then concluded its recommendation as follows:

"Based upon the findings of fact, conclusions of law, and standards, the Hearing Panel unanimously recommends that the Respondent be suspended from the practice of law in the state of Kansas for a period of twelve (12) months. The Hearing Panel also recommends that the Respondent be required to undergo a reinstatement hearing, pursuant to Kan. Sup. Ct. R. 219. At the reinstatement hearing, the Respondent should be required to establish that she has received the appropriate professional help to enable her to prevent a repeat of the misconduct present in this case."

In addition to her objection to the recommended discipline, on appeal respondent takes exception to three findings of the panel: the finding of bad faith obstruction, the finding of refusal to acknowledge the wrongful nature of her conduct, and the finding that depression was not a factor in mitigation.

With regard to the bad faith finding, respondent urges the court to ignore it. She explains that her failure to respond to the Disci-

plinary Administrator's inquiries was due to her being in the grip of untreated depression. Respondent testified that her untreated depression caused her to be in a state of near paralysis.

With regard to the refusal to acknowledge wrongdoing finding, respondent would have the court equate steps that have been taken to ameliorate the harm suffered by her clients with acknowledgment of wrongdoing. She directs the court's attention to her probation plan.

With regard to depression as a mitigating factor, respondent contends that her testimony and that of her treating physician contradict the panel's determination. There was no evidence given by her treating physician. There is a letter appended to her brief at Tab A, which does not seem to be in the record, from a psychiatrist who examined respondent for the first time in June 2001. That psychiatrist states that he did not have the records from Dr. Wang, who, according to respondent, had been her treating physician. The hearing panel expressed grave concern at the lack of evidence, apart from respondent's own testimony, of a diagnosis of depression; whether depression caused the misconduct; and whether and when it was being treated. The hearing panel's concern was warranted.

The court, having reviewed the record herein and the reports of the hearing panel, concurs in the findings, conclusions, and recommendation of the panel.

IT IS THEREFORE ORDERED that Vashti Winterburg be suspended from the practice of law in the State of Kansas for a period of 1 year, effective the date of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2001 Kan. Ct. R. Annot. 224).

IT IS FURTHER ORDERED that respondent shall be subject to all of the reinstatement requirements, including a hearing as provided by Supreme Court Rule 219 (2001 Kan. Ct. R. Annot. 285).

IT IS FURTHER ORDERED that respondent fully comply with Supreme Court Rule 218 (2001 Kan. Ct. R. Annot. 276), that the

costs of these proceedings be assessed to the respondent, and this opinion be published in the official Kansas Reports.

DAVIS, J., not participating.

BRAZIL, S.J., assigned.